United States District Court
Southern District of Texas
**ENTERED**
September 04, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA CARDENAS, individually and as next representative of the ESTATE OF ALEXIS JOVANY CARDENAS and as next friend of F.A., a Minor, K.C., a Minor, K.C., a Minor and A.C., a Minor, and ELENA GUZMAN, | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. H-26-1585 |
| HARRIS COUNTY, a county of the State of Texas and JOHN DOE OFFICERS # 1-18, | § | |
| Defendants. | § | |

ORDER

Pending is Defendant Harris County's Motion to Dismiss under FED. R. CIV. P. 12(b)(6) (Document No. 14), to which Plaintiffs Maria Cardenas and Elena Guzman responded and Harris County replied.[1] After carefully considering the Motion, the parties' submissions, and applicable law, the Court concludes as follows.

---

[1] Plaintiffs move for leave to file a surreply, alleging that such response is necessary because "Defendant Harris County asserts for the first time in its Reply brief that Mr. Cardenas died of a drug overdose rather than from any force the Defendant Officers used against him." Document No. 19 at 1 (citing Document No. 14 at 7 and Document No. 18 at 5). That is untrue. *See* Document No. 14 at 7 (Discussing the autopsy report and summarizing, "Essentially, Mr. Cardenas passed from a drug

## I. Background

On July 6, 2025, Alexis Jovany Cardenas was arrested on a decade-old warrant for an unpaid traffic ticket and detained at the Harris County Jail (the "Jail"). Document No. 1 at 7. A Judge dismissed all charges the next morning on July 7, 2025, but the Harris County Sheriff's Office ("HCSO") did not release Mr. Cardenas that day and waited until 12:50 A.M. on July 8, 2025. Id. What transpired then was recorded on the Jail's surveillance cameras, an edited version of which Defendant Harris County made publicly available via YouTube. *See* Harris County Sheriff's Office, Critical Incident Video, YouTube (Aug. 1, 2025) [hereinafter "Video"], https://www.youtube.com/watch?v=WiTNmkBJ0Xs.[2]

While communicating with the officers at the exit door to the street, Mr. Cardenas backed away from the door with his hands raised. Plaintiffs on information and belief allege that Mr. Cardenas indicated his reluctance to leave because his cell phone battery was dead and he had no safe means of returning home at that hour of night. Document No. 1 at 8. After one officer shoved Mr. Cardenas, two officers backed him into a corner, then grabbed

---

overdose that adversely affected his heart."). Plaintiffs' Motion for Leave to File Surreply to Defendant Harris County's Reply in Support of Its Motion to Dismiss (Document No. 19) is DENIED.

[2] The Video is referenced in Plaintiffs' Complaint and undisputedly central to their claims. *See* Document No. 1 at 7-25 & n.7.

him with enough force to yank off Mr. Cardenas's pants and one shoe as he fell. Video, at 1:10. Again, Mr. Cardenas raised his hands in apparent submission and appeared to try to communicate with the officers, but he resisted the officer's attempts to force him outside through the door. Id. at 1:41. As a third officer entered, Mr. Cardenas tried to return to the Jail's processing area. Id. at 2:22. The three officers prevented Mr. Cardenas from going through the interior door by grabbing the neck of his shirt from behind and throwing him to the ground. Id. at 2:28. The officers then attempted to drag him outside. Id. Mr. Cardenas again resisted leaving, stood up, and an officer deployed a taser against Mr. Cardenas, but the effects of that are out of frame on the video. Id. at 3:09.

The Complaint alleges that the officers threw Mr. Cardenas against the wall and punched him several times with a closed fist. Document No. 1 at 11. Whatever the details, Mr. Cardenas's remaining shoe and his shirt are removed during the struggle. Video, at 3:10-4:00. A fourth officer entered the room and grabbed Mr. Cardenas. Id. at 4:02. Mr. Cardenas, now in just his underwear, was then pinned against the wall by three officers, one on each of his arms and another by the throat. Id. at 4:09. A fourth officer placed all of Mr. Cardenas's clothes and belongings outside. Id. As the interior door opened again, Mr. Cardenas slips through it, followed by the officers still holding him. Id.

at 4:20. The officers shoved him against a wall where he fell into a sitting position on the floor. Id. at 4:26. One officer kneed Mr. Cardenas in the stomach. Id. at 4:30. Three officers then pulled him away from the wall and into a prone position on the ground, holding him down with the weight of their bodies. Id. at 4:30-4:45.

The parties dispute whether Mr. Cardenas's next movements constitute active resistance or mere attempts to avoid pain and enable breathing. Whatever the reason, it takes the officers approximately two minutes to restrain Mr. Cardenas with cuffs on his hands and feet. Id. at 4:26-7:29. During this time, Mr. Cardenas lay on the ground, held down by at least three or more officers, and at least one punched him repeatedly. Id. Whether accidental or intentional, Mr. Cardenas hit an officer in the head one time. Id. at 5:15.

Mr. Cardenas made his last discernable movement, a feeble head turn, as the officers finished securing his feet. Id. at 7:30. Although Mr. Cardenas was not moving, was fully restrained at both his hands and feet, and still held down by other officers, a second officer joined the first in pressing down on Mr. Cardenas's upper back and a third officer leaned on his legs. Id. at 7:40. According to the Video captions, added after-the-fact by Harris County, this was the moment that the officers "gained control" over the situation. Id. The officers, however,

do not appear to ease the pressure on Mr. Cardenas. In the minute or two that followed, upwards of eighteen officers "trickl[ed]" into the room and the camera view was obstructed. Id. at 8:05-9:10; Document No. 1 at 18. When the view clears, Mr. Cardenas lay prone and unmoving, bound at the hands and feet, with multiple officers holding him down. Video, at 8:05-9:10. At one point two officers swapped places. Id. at 9:48.

No officer checked for life signs until Mr. Cardenas had stopped moving entirely for more than four minutes. Id. at 12:23. After discovering that Mr. Cardenas was not responsive some officers began to shake Mr. Cardenas, to which he made no response, and repositioned him on his side. A supervising sergeant entered the room, observed the officers standing over Mr. Cardenas, and then exited. Id. at 12:52-13:07. According to the Complaint, that supervisor "exited without providing any orders or guidance to his inferior officers about the urgent need to initiate emergency medical interventions." Document No. 1 at 25. More officers trickled in, including a second supervisor, who eventually administered CPR. Video, at 13:15. Mr. Cardenas was taken by ambulance to St. Joseph Hospital, where he was pronounced deceased at 1:57 A.M. Id. at 16:16.

In total, for more than eight minutes anywhere from one to five officers continuously applied their body weights on top of Mr. Cardenas, including his upper back and neck area. Id. at 4:30-

12:54. Mr. Cardenas was limp and unresponsive for at least four or five of those eight minutes. Id. at 7:30-12:23. And an additional two minutes passed between the moment that the officers became aware that Mr. Cardenas was unresponsive. Id. at 12:23-14:23.

Mr. Cardenas's widow, Maria Cardenas (in her individual capacity and as representative of the deceased's estate and as Next Friend of his 4 minor children) and his mother, Elena Guzman, filed suit against Defendant Harris County and 18 Unnamed Officers in their individual capacities. Document No. 1. The Complaint alleges, among other things, municipal liability claims against Harris County for excessive force, denial of medical care, and various state law claims. After Harris County filed the present Motion to Dismiss those claims, Plaintiffs moved for dismissal of the state law claims against Harris County, which motion the Court granted. Document Nos. 32, 36. The excessive force and denial of medical care claims against Harris County and all claims asserted against the individual officers remain pending. The individual officers have not yet been served and do not join Harris County's present Motion to Dismiss.

## II. Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV.

P. 12(b)(6). To survive a motion for dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966).

The Court "must accept all well-pleaded facts as true" and view those facts "in the light most favorable to the plaintiff." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019) (quoting Campbell v. Wells Fargo Bank, N.A., 781 F.2d 440, 442 (5th. Cir.)); *see also* Twombly, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level," assuming "that all the allegations in the complaint are true (even if doubtful in fact)."). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Walker, 938 F.3d at 735 (quoting Papasan v. Allain, 106 S. Ct. 2932, 2944 (1986)). "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." Id. (quoting Iqbal, 129 S. Ct. at 1949). "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009) (quoting Gregson v. Zurich Am. Ins. Co., 322 F.3d 883, 885 (5th Cir. 2003)).

## III. Matters Outside the Pleadings

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Inclusive Communities Project, Inc. v. Lincoln Prop. Co., 920 F.3d 890, 900 (5th Cir. 2019). Harris County submits numerous evidentiary exhibits in support of its Motion to Dismiss. *See* Document No. 14 at 8-10, 17-18; Document No. 17 at 10 n.2, 19-20, 23 n.8. Plaintiffs contend that Harris County's evidence is extrinsic to the pleadings because the documents are not referenced in or attached to the Complaint and the adjudicative facts are subject to reasonable dispute. *See* Document No. 17 at 10 n.2, 19-20, 23 n.8. Specifically, Plaintiffs object to the documents referenced in ¶ 8, ¶ 11(a), ¶ 11(b), ¶ 11(f), and ¶ 34 of the Motion to Dismiss. Id. (citing Document

No. 14 at 8-10, 17-18). Harris County's Motion to Dismiss does not dispute that those documents are extrinsic to the pleadings and not referenced in or attached to the Complaint.[3] Instead, Harris County asks the Court to take judicial notice of the adjudicative facts within those documents. *See* Document No. 14 at 8-10; Document No 14-2; Document No. 15.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). At the pleadings stage judicial notice should be used sparingly and "[o]nly in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point." Reneker v. Offill, 2010 WL 1541350, at *5 (N.D. Tex.

[3] For the first time on reply, Harris County argues that certain documents relied on by Defendant are referenced in the Complaint. "[T]he court will not consider an argument raised for the first time in a reply brief." Jacobs v. Tapscott, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.), aff'd, 277 F. App'x 483 (5th Cir. 2008). Moreover, Harris County's evidence is only central to the Complaint if "the *document itself* is [ ] necessary to establish an element" of Plaintiffs' claim. *See* Mushtaha v. Meridian Sec. Ins. Co., 2024 WL 3586795, at *9 (S.D. Tex. July 2, 2024) (Ho, M.J.) (emphasis added), adopted by, 2024 WL 3585673 (S.D. Tex. July 29, 2024). "[I]f a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." Kaye v. Lone Star Fund V (U.S.), L.P., 453 B.R. 645, 662 (N.D. Tex. 2011) (Lynn, J.) (citing Scanlan v. Tex. A & M Univ., 343 F.3d 533, 536–37 (5th Cir.2003)).

Apr. 19, 2010) (Fitzwater, J.) (quoting Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir.2007)). "Judicial notice is reserved for indisputable facts." Id. at *6.

Harris County contends that these documents are public records and asserts that judicial notice is appropriate for that sole reason. But Harris County does not explain why it believes each of these varied documents is a public record. At the pleadings stage, a document is not designated as a public record simply because it "*may* be accessible to the public." Ambler v. Williamson Cnty., Texas, 2021 WL 769667, at *4 (W.D. Tex. Feb. 25, 2021) (emphasis in original). Regardless, "a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005). Thus, even assuming that the documents referenced in ¶ 8, ¶ 11(a), ¶ 11(b), ¶ 11(f), and ¶ 34 of Harris County's Motion to Dismiss are public records, they must "clear [Rule 201's] 'indisputability' hurdle" before the Court may take judicial notice. *See* Taylor v. Charter Med. Corp., 162 F.3d 827, 830 (5th Cir. 1998) (citing FED. R. EVID. 201(b)); *see also* Withrow v. Miller, 348 F. App'x 946, 948 (5th Cir. 2009) (per curiam) (finding error where the District Court took judicial notice of a public record that was subject to reasonable dispute).

Paragraph 8 refers to Mr. Cardenas's autopsy report, which is attached as Harris County's Exhibit A and filed separately under seal. Document No. 14 at 7; Document Nos. 14-1, 15. Harris County asks the Court to take judicial notice not only of the fact that the report exists, but also of its contents, in order to rebut Plaintiff's contention that Mr. Cardenas's death was caused by the Officers' excessive use of force. *See* Document Nos. 14 at 15, 18 at 5; *see also* Document No. 17 at 10 & n.2 (Plaintiffs strongly dispute the report's findings and conclusions). "Public reports made by government bodies are the proper subject of judicial notice, but courts may not accept disputed facts contained in those reports to establish their truths." Micah 6:8 Mission v. Reynolds Metals Co., L.L.C., 2026 WL 2268372, at *1 (5th Cir. Aug. 5, 2026) (per curiam); *see also* Zahau v. Shacknai, 2014 WL 12526715, at *4 (S.D. Cal. Oct. 15, 2014) ("[I]t would be improper for the Court to take judicial notice of the Coroner's conclusion as to Ms. Zahau's death because that fact is a fact 'subject to reasonable dispute.'" (citation omitted)). The Court takes judicial notice that an autopsy report was issued on July 9, 2025 by the Harris County Institute of Forensic Services, but to take judicial notice of its disputed contents would be improper and the Court declines to do so.

Sub-Paragraphs 11(a) and (b) report Harris County Jail's average daily population over the previous 15 years and the numbers

of released inmates in a 90-day period in 2026. Document No. 14 at 8. Harris County, however, does not attach these statistics as exhibits and the website links it provides are not functional or accessible. Further, Plaintiffs dispute the incident percentages that Harris County infers from these statistics and claims they are contradicted by news articles referenced in the Complaint. *See* Document No. 17 at 20 (citing Document No. 1 at 27). Disputed statistics from inaccessible documents are not facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201(b).

Sub-Paragraph 11(f) refers to a 2019 letter from a Department of Justice ("DOJ") attorney addressed to Harris County attorneys, stating that the Sheriff's office had adequately addressed the issues raised in the DOJ's jail investigation. Document No. 14 at 9. The letter is also attached as Harris County's Exhibit B. Document No. 14-2. There is no indication that this unauthenticated letter was ever made publicly available. *See id.*; *see also* Polnac v. City of Sulphur Springs, 555 F. Supp. 3d 309, 325 (E.D. Tex. 2021) (declining to take judicial notice because "there is no indication that the body camera footage is public record, other than on argument of the Officers."). Moreover, Plaintiffs dispute the adjudicative facts within the letter because the DOJ Special Litigation Case Summary Website, which was last updated April 24, 2026, still lists Harris County Jail as

under investigation and does not mention any 2019 update or resolution. *See* Document No. 17 at 19-20 & n.5 (citing DOJ Special Litigation Section, *Case Summaries: Harris County Jail*, (April 24, 2026), https://www.justice.gov/crt/special-litigation-section-case-summaries#harris-summ). The Court declines to take Judicial Notice of the adjudicative facts within the letter.

Paragraph 34 contains website links to the 2026 De-escalation & Response to Resistance Policy for the Harris County Sheriff's Office, a police academy training schedule showing only future trainings in 2026, and a Fox News video about CPR training at Harris Health. Document No. 14 at 17-18. But Harris County "merely provided internet links, which are insufficient to make the underlying evidence of record."[4] United States ex rel. Young v. Kindred Healthcare, Inc., 2022 WL 126486, at *3 (W.D. Tex. Jan. 13, 2022), adopted sub nom. 2022 WL 1126041 (W.D. Tex. Feb. 8, 2022). "Courts routinely have declined to take judicial notice of facts asserted in news reports and newspapers because they are not a source whose accuracy cannot be questioned." Ambler, 2021 WL 769667, at *4 & n.8 (internal quotation marks omitted) (collecting

[4] Evidence presented by way of website links, of which both parties are guilty, violates this Court's procedures. Evidentiary submissions in briefs must "be contained in the appendix" with "a paginated table of contents, and should be tabbed to locate easily the materials contained in the appendix." Judge Ewing Werlein, Jr. Proc., S.D. Tex. § 6(B).

authorities). Judicial notice of the Fox News video is not appropriate.

Judicial notice of adjudicative facts found on government websites, on the other hand, is generally allowed. *See* Kitty Hawk Aircargo, Inc. v. Chao., 418 F.3d 453, 457 (5th Cir.2005). But "[c]ourts should not take judicial notice of irrelevant facts." Deakle v. Westbank Fishing, LLC, 559 F. Supp. 3d 522, 526 (E.D. La. 2021); *see also* Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) ("Adjudicative facts are facts that are *relevant to a determination of the claims* presented in a case." (emphasis added)). Harris County has not attempted to explain why the *2026* version of the De-escalation & Response to Resistance Policy and an upcoming *2026* police academy training schedule have relevance to Mr. Cardenas's death in the jail in *2025*.[5] Indeed, the 2026 versions of policies and trainings are not relevant to Plaintiffs' claim that Harris County did not adequately train, supervise, and discipline its detention officers on duty in 2025. *See* Varsity Spirit LLC v. Varsity Tutors, LLC, 2022 WL 1266030, at *1 (N.D. Tex. Apr. 28,

[5] Curiously, Harris County purports to have last visited the De-escalation & Response to Resistance Policy website on July 1, 2025, a full week *before* Mr. Cardenas died on July 8, 2025. Document No. 14 at 17-18. The Policy website was revised on July 14, 2025. 501—De escalation & Response to Resistance, Harris County Sheriff's Office, https://hcsopolicy.com/policy/501-de-escalation-response-to-resistance/ (last visited Aug. 19, 2026).

2022) (Fitzwater, J.) (declining to take judicial notice of a current trademark registration where the plaintiff's claim was based on infringement of an older version of that trademark).

The Court takes judicial notice only of the existence of an autopsy report and declines at this stage to take judicial notice of Defendant's extrinsic evidence referenced in ¶ 11(a), ¶ 11(b), ¶ 11(f), and ¶ 34 of Harris County's Motion to Dismiss. Accordingly, contents of the documents referenced in ¶ 8, ¶ 11(a), ¶ 11(b), ¶ 11(f), and ¶ 34 of Harris County's Motion to Dismiss are excluded from consideration. *See* Ace Am. Ins. Co. v. Huntsman Corp., 255 F.R.D. 179, 188 (S.D. Tex. 2008) (Rosenthal, J.).

## IV. Analysis

Plaintiffs assert two claims against Defendant Harris County: excessive force under the Fourth Amendment (Count 4) and denial of medical care under the Fourteenth Amendment (Count 6). Harris County argues that both these claims fail to satisfy the requirements first outlined in Monell v. Dep't of Soc. Servs. of N.Y.C., 98 S. Ct. 2018 (1978), commonly referred to as Monell liability. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir. 2009). It is undisputed

that the Harris County Sheriff is the policymaker for the Harris County Jail, which since 2017 has been Sheriff Ed Gonzalez.

A. Use of Excessive and Lethal Force

Although the primary inquiry under Monell concerns Harris County policies, as a threshold matter, Harris County is not liable if the pleadings foreclose the possibility that the use of force was excessive. Harris County's Motion to Dismiss raises only one cognizable argument on this point--that the pleadings do not allege with enough specificity that head punches are a constitutional violation. *See* Document No. 14 at 15. But Plaintiffs' excessive force claim encompasses much more than just punches to Mr. Cardenas's head. The Complaint alleges that numbers of Officers participated in a near-immediate escalation of force and without justification shoved, grabbed (with such force as to yank off his pants and shoe as he fell to the floor), tased, punched, and dragged Mr. Cardenas (who was not suspected of any crime[6] and did

[6] Harris County argues that Mr. Cardenas's actions "amounted to criminal conduct" like assault and trespass. Document No. 18 at 1. The facts of the altercation are subject to dispute. Further, the Officers' command to leave the Jail at 1:00 A.M. the day *after* charges against him were dismissed was not a lawful order, *see* 37 Tex. Admin. Code § 267.6; *see also* Crittindon v. LeBlanc, 37 F.4th 177, 188 (5th Cir. 2022) (There is a "clearly established right to timely release from prison." (quoting Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011))). Section 267.6(a), with certain exceptions not applicable here, states that a facility such as a county jail "*shall release an inmate at any time beginning at 6:00 a.m. and ending at 5 p.m. on the day the inmate*

not resist arrest), and then wrestled him into a prone position, tied his hands and feet, and held him down with their body weights, evidently compressing his airway for an extended time until and after Mr. Cardenas ceased to move, ultimately resulting in his death. The Video, when viewed in the light most favorable to Plaintiffs, does not contradict those allegations.

"It has long been clearly established that, when a suspect is not resisting, it is unreasonable for an officer to apply unnecessary, injurious force against a restrained individual, *even if the person had previously not followed commands or initially resisted the seizure.*" Aguirre v. City of San Antonio, 995 F.3d 395, 408, 416 (5th Cir. 2021) (emphasis added) (further finding that "placing and holding [someone] in the prone maximal-restraint position" is an "extraordinarily dangerous" use-of-force); *see also* Timpa v. Dillard, 20 F.4th 1020, 1034 (5th Cir. 2021) (officer's continued pressure on a detainee's back for three and a half minutes after loss of consciousness was unreasonable); Salcido as Next Friend of K.L. v. Harris Cnty., Texas, 2018 WL

*discharges the inmate's sentence.*" (emphasis added.) An "inmate" in Texas law includes "a person arrested for . . . a criminal offense . . . and confined in a county jail." TEX. GOV'T CODE ANN. § 511.001(6). Harris County cites no authority for its contention that Section 267.6 does not apply to someone with Mr. Cardenas's status. *See* Document No. 14 at 8. Mr. Cardenas was an "inmate . . . confined in a county jail" entitled to release as a matter of law when the Court dismissed all charges against him on the morning of July 7, 2025. That release was required to be made before 5:00 p.m. that same day.

4690276, at *33 (S.D. Tex. Sept. 28, 2018) (Lake, J.) (finding that "all of the six factors in the [objective reasonability] analysis weigh against summary judgment" in a similar wrongful death by asphyxiation case where officers used "deadly force against a pretrial detainee after he had stopped resisting"). The pleadings adequately allege that the Officers' near-immediate escalation to restrain and apply deadly force against a restrained man with no pending criminal charges was an objectively unreasonable and clearly established excessive use of force.[7]

The only remaining question is whether a Harris County policy was the "moving force" behind Plaintiffs' injuries. According to Plaintiffs, Harris County Jail has a "longstanding policy, practice, and/or custom whereby jail detention officers routinely and immediately resort to serious physical force--including takedowns, closed-fist strikes, and prolonged prone restraints--against unarmed, non-violent, and non-threatening individuals." Document No. 1 at 26. "Official policy establishes culpability, and can arise in various forms" including "written policy statements, ordinances, or regulations," and through evidence of "a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" Peterson, 588 F.3d at 847 (quoting Piotrowski v. City of Houston,

---

[7] The Court takes no position at this time as to the 18 John Doe Officers' individual entitlement to qualified immunity.

237 F.3d 567, 579 (5th Cir.2001). "[T]o find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" Davidson v. City of Stafford, Texas, 848 F.3d 384, 396 (5th Cir. 2017), as revised (Mar. 31, 2017) (quoting Peterson, 588 F.3d at 850). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." Id.

As evidence of the long-running pervasiveness of the alleged excessive force policy at Harris County Jail, the Complaint points to (1) federal wrongful death investigations conducted by the DOJ in 2009 and by the FBI in 2023; (2) statistics from the Texas Commission on Jail Standards Serious Incident Reports showing a high prevalence of use-of-force incidents as compared to other Texas jails; (3) statistics showing that Harris County Jail reported more use-of-force incidents than all other Texas jails combined in July 2025--the month Mr. Cardenas died; (4) a 2024 documentary film and related news articles finding 810 use-of-force reports between 2020-2023 at Harris County Jail that Sheriff Gonzalez "agreed were not warranted and experts said go against best practices;"[8] (5) descriptions of 25 similar prior incidents

[8] Harris County objects to the news article as inadmissible hearsay. Document No. 1 at 3. That objection, raised for the

involving unreasonable use of restraint holds and closed-fist strikes resulting in serious injuries;[9] and (6) descriptions of the incident at issue. *See* Document No. 1 at 27-42.

Courts in this district considering excessive force claims against Harris County Jail have repeatedly found that a similar combination of evidence sufficiently alleges custom or practice of institutionalized excessive force. *See* Wagner v. Harris Cnty., 2024 WL 2836332, at *10-12, 17 (S.D. Tex. June 4, 2024); Bartee v. Harris Cnty., 2018 WL 8732519, at *5 (S.D. Tex. Mar. 5, 2018); Howell v. Harris Cnty., Texas, 2024 WL 3647012, at *4 (S.D. Tex. Aug. 1, 2024); Chavez-Sandoval v. Harris Cnty., 2025 WL 2029931,

---

first time on reply, is waived. The news article is attached to the Complaint and thus at this stage is properly considered in the light most favorable to Plaintiffs. *See* Document No. 1 at 27 & n.41 (citing Tina Macias et al., 'STRUCK' Hundreds of inmates punched in head in Harris County Jail, KHOU 11, Dec. 6, 2024, https://www.khou.com/article/news/investigations/struck-inside-harris county-jail-inmate-head-punch-houston-texas-sheriff-ed-gonzalez-detention-officer/285 40eea725-3ab7-49dc-8b18-0d0840e267c5.).

[9] Harris County argues that disputed allegations in other lawsuits are "not sufficient to defeat a 12(b)(6) motion." Document No. 14 at 12. But Harris County's cited case law concerns whether the Court can take judicial notice of disputed allegations in other lawsuits. Unlike those cases, here the Complaint itself describes prior instances of excessive force and denial of medical care, facts which must be taken as true at this stage. *See* Wagner, 2024 WL 2836332, at *10 n.4 ("Defendant makes a novel argument that factual allegations in other lawsuits against a municipality cannot be the source of similar incidents to support the existence of a policy or custom unless those suits resulted in a finding of liability. The Court is aware of no such rule, nor would the adoption of one be wise.").

at *5 (S.D. Tex. July 21, 2025) (Rosenthal, J.); *see also* Salcido, 2018 WL 4690276, at *33 (finding a custom or pattern of institutionalized excessive force at Harris County Jail at the summary judgment stage).

Harris County argues that the allegations and evidence are insufficient because the Complaint does not allege statistics concerning the size of the Jail or number of inmates. Document No. 14 at 14 (citing Verastique v. City of Dallas, Texas, 106 F.4th 427, 432 (5th Cir.), cert. denied, 145 S. Ct. 772 (2024)). Verastique, however, concerned a failure to discipline claim, not excessive force. In Verastique, statistics like department size and number of arrests were important factors in determining whether city's failure to discipline amounted to deliberate indifference. Id. at 433-34. An excessive force claim, however, does not have that same deliberate indifference component. And unlike Verastique, here the pleadings allege that the policymaker, Sheriff Gonzalez, had actual knowledge of institutionalized excessive force and had made public statements to that effect. *See* Document No. 1 at 27, 37, 41. Moreover, the pleadings allege that "[t]he high number of excessive force incidents at the Jail cannot be explained away by the County's size" and offer statistics including that "although the Jail only houses roughly 12% of the state's total jail population, it accounted for 51% of all use-

of-force incidents in Texas jails in 2022, and 53% in 2023." Document No. 1 at 27.

Harris County also argues that the Complaint's 25 descriptions of similar prior incidents are insufficient to establish a pattern. Document No. 14 at 15. "The number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies." Saenz v. City of El Paso, 637 F. App'x 828, 832 (5th Cir. 2016) (citation omitted). Descriptions of prior incidents "must point to the specific violation in question." Hicks-Fields v. Harris Cnty., Texas, 860 F.3d 803, 810 (5th Cir. 2017) (quoting Peterson, 588 F.3d at 850). Although "the specificity required should not be exaggerated, [5th Circuit precedent] require[s] that the prior acts be fairly similar to what ultimately transpired." Id. In Verastique, for an example of an inadequate pleading, of the nineteen prior incident descriptions alleged, eight were described in a single "inscrutably vague" sentence, and the remaining eleven were "totally devoid of critical facts." Verastique, 106 F.4th at 432. Specifically, the court noted that the pleadings failed to state whether the detainee made threats, resisted arrest or otherwise prompted the altercation. Id.

In contrast, here all 25 prior incidents allege physical assaults against detainees who were unarmed, not resisting, and posed no threats. Document No. 1 at 28-36. And 11 of those 25

descriptions further allege that the officers acted without provocation because the detainee was in handcuffs, or in response to innocuous acts like "follow[ing] a second officer's orders to retrieve his clean clothing from a laundry cart," or "asking to speak to a sergeant about his television privileges." *See* Document No. 1 at 28-36. In addition, all 25 incidents allegedly occurred at Harris County Jail and each description specifically states the year of occurrence, identifies the detainee by name, describes the officer's use of force (each of which includes some form of punching, kicking, dragging, choking, hogtying, or asphyxiating), and indicates the detainee's resultant injuries (either implied by the nature of the force or explicitly stated, ranging from a broken hand to death). Document No. 1 at 28-36.

A small number of the descriptions are distinguishable--three involved mentally ill or disabled detainees, and one involved pushing a detainee down the stairs. Document No. 1 at 31-33. Otherwise, the prior incidents allege that Harris County Jail Officers, with little or no provocation from a non-threatening detainee, engaged in a near-immediate escalation of brute-force that resulted in serious injury or death. For example, Jacoby Pillow was awaiting release on bond for a misdemeanor charge when officers at the Harris County Jail beat, hogtied, and placed their weight on his chest and back, ultimately leading to his death by asphyxiation and blunt force trauma. Document No. 1 at 30. In

that case, the Court denied Harris County's Motion to Dismiss Plaintiffs' § 1983 claims finding that the Complaint plausibly alleged a widespread pattern of excessive force sufficient to overcome Monell liability. *See* Wagner, 2024 WL 2836332, at *10-12, 17.

The 25 prior incidents alleged in the Complaint are sufficiently specific and similar to the facts of this case to indicate a custom or practice that amounts to a county policy of jail officers applying hair-trigger excessive force against non-threatening inmates. The specific facts alleged indicate a "flagrant or severe" level of excessive force that has become "the subject of prolonged public discussion or of a high degree of publicity," and of which the policymaker has actual knowledge. *See* Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984). In such a case a "shorter pattern of the conduct" may be required. Id. Plaintiffs have sufficiently alleged facts sufficient to show that Harris County's longstanding custom or practice of institutionalized excessive force was the moving force[10] behind Mr. Cardenas's death.

---

[10] As observed above, Harris County disputes Mr. Cardenas's cause of death based on an autopsy report, the conclusion of which Plaintiffs vehemently dispute. At most the autopsy report would create merely a dispute of fact. The pleadings allege facts that, taken as true, reasonably support an inference that the Officers, acting pursuant to a Harris County policy, used "objectively unreasonable and excessive lethal force" and as a direct result,

B. Denial of Medical Care

Under the Fourteenth Amendment, "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (quoting Hare v. City of Corinth, Miss., 74 F.3d 633, 644-45 (5th Cir.1996) (en banc). "In general, conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." Chavez-Sandoval, 2025 WL 2029931, at *3 (internal quotation marks omitted). The distinction is important because an episodic act requires proof of deliberate indifference, while intent is presumed under a conditions-of-confinement theory. *See* Shepherd, 591 F.3d at 452.

The "boundary between these two categories" is somewhat "porous" because "[a]ny policy inherently must be implemented by individual actors." Wagner, 2024 WL 2836332, at *7. Thus, "the presence *vel non* of the individual actors does not alter the fundamental nature of the claim." Palo v. Dallas Cnty., 2007 WL

"Mr. Cardenas experienced conscious pain and suffering, and died." Document No. 1 at 60, 62.

2140590, at *4 (N.D. Tex. July 26, 2007) (Fitzwater, J.). And "the question of which theory applies is a context-specific inquiry." Wagner, 2024 WL 2836332, at *7. Neither party addresses whether Plaintiffs' denial of medical care claim stems from conditions-of-confinement or an episodic act. But both parties' briefs focus on Harris County policies, which implies a conditions of confinement theory.

A conditions-of-confinement claim is adequately pled when the Complaint's specific allegation of "de facto policies of failing to provide emergency medical services" implicates "the jail's system of providing medical care." Yniquez v. Reeves Cnty., 2026 WL 93143, at *4 (W.D. Tex. Jan. 5, 2026) (quoting Shepherd, 591 F.3d at 453), adopted sub nom., 2026 WL 165885 (W.D. Tex. Jan. 21, 2026); *see also* Palo, 2007 WL 2140590, at *4. Here, the Complaint alleges that "[s]ince at least 2008, the County has consistently maintained an unlawful policy or custom whereby its detention officers ignore the serious medical needs of detainees, including those detainees experiencing medical emergencies as a result of officers' use of excessive force." Document No. 1 at 66. In other words, Plaintiffs allege that Harris County has a pervasive *de facto* policy which upwards of 18 officers collectively followed when gathering around Mr. Cardenas's non-responsive body and failing to provide emergency medical care for at least seven-

minutes.[11] "[N]o single individual's error" caused that delay because numerous officers displayed the same general lack of urgency. *See* Shepherd, 591 F.3d at 453.

Where, as here, the pleadings seek to invoke a *de facto* policy based on a pattern of conduct, a conditions-of-confinement theory is adequately plead if the evidence and allegations reflect "that the jail official's acts or omissions were sufficiently extended or pervasive." *See* Cadena v. El Paso Cnty., 946 F.3d 717, 727 (5th Cir. 2020) (cleaned up); *see also* Wagner, 2024 WL 2836332, at *7 ("Plaintiffs allegations of pervasive misconduct are properly brought under a conditions-of-confinement theory" based on "extensive evidence suggesting the relevant conduct is ubiquitous in the [Harris County Jail]" including TCJS non-compliance reports, the 2009 DOJ Report, statements from the Sheriff, and "dozens of descriptions [of] incidents similar to those experienced by Plaintiffs"); Chavez-Sandoval, 2025 WL 2029931, at

---

[11] Mr. Cardenas's movements slow about 6 minutes into the Video, with his last discernable movement, a slight head twitch, occurring at around the 7:30 mark. The Officers do not check on Mr. Cardenas's breathing status until nearly 5 minutes later. Video, at 12:23. It takes them another 25 seconds to "notice" that he is unresponsive. Id. at 12:48. Multiple Officers then meander into the room with no apparent sense of urgency, including at least two supervisors. Document No. 1 at 25. But most Officers just stand there and nearly two more minutes elapse before anyone attempts to revive Mr. Cardenas with CPR. Video, at 14:30. In total, Mr. Cardenas was unresponsive for at least seven minutes before any Officer or other Jail personnel administered emergency medical care.

*3 (considering a denial of medical claim as a condition of confinement where a detainee was beaten and hogtied after a verbal disagreement in the Jail's processing center). As in those cases, here, Plaintiffs support their allegations with extensive evidence including (1) a 2009 DOJ Report which found that deficiencies in medical care were "serious enough to place detainees at an unacceptable risk of death or injury," (2) a series of TCJS reports showing consistent non-compliance and failure to provide necessary medical care, and (3) and descriptions of 28 incidents of Harris County Officers ignoring medical needs, 17 of the medical needs having been caused by the Harris County Officers' use of force. *See* Document No. 1 at 43-54; DOJ Report at 3. These specific allegations adequately plead pervasive conduct sufficient to invoke a denial of medical care under a conditions-of-confinement theory.

"To prevail on a claim of unconstitutional conditions of confinement, a plaintiff must show: (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights." Cadena, 946 F.3d at 727 (citations omitted). Because Harris County does not argue that a policy of ignoring serious medical needs is reasonably

related to a legitimate governmental objective, "the Court will proceed under the assumption that they do not." *See* Wagner, 2024 WL 2836332, at *9. And as explained above, Plaintiffs' evidence presents a sufficiently extended or pervasive pattern of conduct.

Harris County, however, presents contrary evidence that it contends negates the possibility of a pervasive pattern. Document No. 1 at 16-17. Most of that evidence is not properly before the Court or is irrelevant. For example, Harris County argues that there is no pattern of denial of medical care because Harris Health has medical staff onsite at the Jail. There is no contention, however, that any Harris Health personnel were involved in Mr. Cardenas's medical treatment or delay of treatment. Similarly, Harris County's argument comparing the death rate in the Harris County Jail to the national death rate during the Covid-19 pandemic is irrelevant and statistically illogical.

The third and final question is whether that policy "caused the violation of [Plaintiffs'] constitutional rights." Cadena, 946 F.3d at 727. Although Harris County disputes Mr. Cardenas's cause of death, the pleadings, taken in the light most favorable to Plaintiffs, sufficiently allege that Mr. Cardenas died from an inability to breathe and was denied potentially life-saving emergency medical care for at least seven minutes.

V. ORDER

For the foregoing reasons, it is

ORDERED that Defendant Harris County's Motion to Dismiss (Document No. 14) is in all things DENIED.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 4th day of September, 2026.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE